IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | NO.  3:17-CR-568-L |
| | ) | |
| JUAN GONZALEZ | ) | |

**MEMORANDUM OPINION AND ORDER**

By *Special Order 3-251*, before the Court is the defendant's *Emergency Motion for Pretrial Release Due to Public Health and Safety Threat Posed by Covid-19 Pandemic*, filed April 30, 2020 (doc. 24).  Based on the relevant filings and applicable law, the motion is **DENIED**.

**I.**

Juan Gonzalez (Defendant) was convicted of conspiracy to possess with intent to distribute cocaine in the Eastern District of Texas on September 12, 2012.  (*See* doc. 2 at 15.)  On June 15, 2018, his supervision was transferred to this district by *Transfer of Jurisdiction* dated May 14, 2018.  (*See* doc. 1.)

On September 6, 2019, Defendant was charged in a *Petition for Offender Under Supervision* with violating certain conditions of supervised release, and an *Addendum to Petition for Offender Under Supervision* was filed on March 2, 2020.  (*See* docs. 3, 5.) He was arrested and made his initial appearance in this district on March 3, 2020, and the Government moved to detain him pending a revocation hearing and for a continuance.  (*See* docs. 8, 11.) Defendant elected to proceed with a preliminary examination and a detention hearing and also requested a continuance.  (*See* doc. 11.) The Court granted a continuance and ordered Defendant detained temporarily.  (*See* doc. 10.)

On March 10, 2020, Defendant appeared in person and through counsel for detention and probable cause hearings. (*See* doc. 13.) After considering the testimony of the witnesses, the argument of counsel, and the petition, the Court found probable cause to hold Defendant for a revocation hearing existed based on the supervising probation officer's testimony that Defendant violated his conditions of supervised release by committing another crime, as demonstrated by his arrest in Dallas County for multiple offenses, including manufacture/delivery of a controlled substance, unlawfully carrying a weapon, and evading arrest, on August 18, 2019. (*See* doc. 14.) The officer also testified that Defendant had also been arrested and charged in Hunt County for evading arrest and possession of marihuana on November 26, 2019, that he failed to report the first arrest to his supervising officer, and that he failed to respond to the officer's subsequent attempts to contact him. At the time the officer submitted the petition in September 2020, Defendant's whereabouts were unknown, and she has not had any contact with him since then. (*See id.*)

After considering the factors in 18 U.S.C. § 3142(g), the Court also found that Defendant had not met his burden to establish by clear and convincing evidence that he will not pose a flight risk or danger to the community. *See* Fed. R. Crim. P. 32.1(a)(6) (burden of proof is on defendant); 18 U.S.C. § 3143 (standard of proof is clear and convincing evidence). (*See id.*) It noted that Defendant had twice been arrested in different jurisdictions for new drug offenses as well as fleeing from officers trying to arrest him during his term of supervised release, and he had failed to report to his probation officer. (*See id.*) It ordered him detained pending his revocation hearing. (*See id.*)

Defendant now seeks release pending his hearing due to the global pandemic caused by

2

COVID-19. (*See* doc. 24.) He contends that there has been no finding that his ongoing detention is necessary to serve any compelling government interest, and that his continued detention violates his due process rights. (*See id.* at 8-9.)

## II. STANDARD FOR RECONSIDERATION

Defendant's motion did not assert a legal basis for his request for release pending sentencing. (*See* doc. 24.) Based on his argument that the detention order must be "revisited because of changed circumstances," his motion is construed as a motion for reconsideration of the prior detention order.

Although motions for reconsideration "are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (*citing United States v. Cook*, 670 F.2d 46, 48 (5th Cir.), *cert. denied*, 456 U.S. 982 (1982)); *see also United States v. Brewer*, 60 F. 3d 1142, 1143 (5th Cir. 1995) ("a motion for reconsideration ... is a judicial creation not derived from statutes or rules"). Their use in criminal proceedings has been expressly and repeatedly sanctioned. *Cook*, 670 F.2d at 48 (citations omitted). Courts have "continuing jurisdiction over criminal cases and are free to reconsider [their] earlier decisions." *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975). In the context of criminal proceedings, courts have applied the same legal standards as for motions for reconsideration in civil cases. *United States v. Williams*, No. 3:19-CR-159-S, 2019 WL 2161648, at *2 (N.D. Tex. May 16, 2019) (citations omitted); *see also United States v. CITGO Petroleum Corp.,* 908 F.Supp.2d 812, 820 (S.D. Tex. 2012).

Where a motion for reconsideration challenges a final civil judgment, it is treated either as a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil

3

Procedure, or as a motion seeking relief from judgment under Rule 60(b).  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 14 (5th Cir.1994).  Where a motion challenges an interlocutory order, it is considered under Rule 54(b).  *Contango Operators, Inc. v. U.S.*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013).  Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  In deciding motions under Rule 54(b), district courts have looked to Rule 59(e).  *See WorkSTEPS, Inc. v. ErgoScience, Inc.*, 88 F. Supp. 3d 752, 758 (W.D. Tex. 2015).  It "'serve[s] the narrow purposes of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).  This is precisely the standard that courts have used to consider motions for reconsideration in the criminal context.  *See United States v. Salinas*, 665 F.Supp.2d 717, 720 (W.D. Tex. 2009) (finding that motions for reconsideration in criminal cases "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."); *see also CITGO Petroleum Corp.*, 908 F.Supp.2d at 820 (applying Rule 59(e)'s standards to motion for reconsideration in a criminal case).

     As the Fifth Circuit has more recently made clear in the civil context, however, a "'trial court is free to reconsider and reverse [an interlocutory order or] decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting

4

*Lavespere,* 910 F.2d at 173). It has specifically noted the flexibility in Rule 54(b), which reflects courts' inherent power to provide relief from interlocutory orders and decisions "'as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)); *Cabal v. Brennan*, 853 F.3d 763, 766 n. 3 (5th Cir. 2017). Given the Fifth Circuit's finding of district courts' continuing jurisdiction over criminal cases and freedom to reconsider earlier decisions, *Scott*, 524 F.2d at 467, this more flexible standard likewise appears applicable in the context of a motion to reconsider a detention order, and it will be applied in this case.

### III. DUE PROCESS

Defendant argues that in light of the COVID-19 outbreak, his continued "pretrial" detention pending his revocation hearing violates his constitutional right to due process under the Eighth Amendment. (*See* doc. 24 at 1, 8-9.)[1]

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "The protections of the Eighth Amendment ... are limited in scope to convicted prisoners and do not apply to pretrial detainees." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). A federal pretrial detainee's constitutional rights related to conditions of confinement instead flow from the Due Process Clause of the Fifth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Morin*, 77 F.3d at 120. The due process rights of a supervised releasee likewise flow from the Fifth Amendment. *See United States v. Alvear*, _F. 3d__,

---

[1]COVID-19 is an infectious disease caused by a new virus, and its resulting respiratory complications have resulted in thousands of deaths around the world and in the United States. *See United States v. Morris,* No. 3:19-CR-573-B, 2020 WL 1694301, at *4 (N.D. Tex. Apr. 6, 2020) (citations omitted). According to the Center for Disease Control (CDC), persons with underlying medical conditions, such as heart disease, lung disease, diabetes, asthma, and obesity, are at a higher risk of developing serious COVID-19 illness. *See id.* (citations omitted). The CDC has acknowledged the particular challenges faced by correctional and detention facilities in controlling the transmission of COVID-19. *See id.* (citations omitted).

5

2020 WL 2464743, at *6 (5th Cir. May 13, 2020) (concurrence); *United States v. Tippens*, 39 F.3d 88, 90 (5th Cir. 1994).  It provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V.

In the context of pretrial detention, the Fifth Circuit has held that "detention under the Bail Reform Act does not on its face violate the due-process clause of the Fifth Amendment." *United States v. Hare*, 873 F.2d 796, 800 (5th Cir. 1989), citing *United States v. Salerno*, 481 U.S. 739, 742 (1987).  "The Due Process Clause of the Fifth Amendment prohibits holding pretrial detainees under conditions that amount to punishment." *United States v. Arce*, 30 F.3d 1494, 1994 WL 399506, at *7 (5th Cir. 1994), citing *Bell*, 520 U.S. at 535.  Pretrial detention in order to secure a defendant's appearance or protect the public is not punitive.  *See Salerno*, 481 U.S. at 748.  "Because pretrial detention under the Act is regulatory, not penal, it does not constitute 'impermissible punishment before trial' that would violate due process." *Hare,* 873 F.2d at 800, quoting *Salerno*, 481 U.S. at 742; *see also United States v. Stanford*, 394 F. App'x 72, 2010 WL 3448524, at *1 (5th Cir. 2010) (the due process clause "'forbids pretrial detention that is punitive, rather than regulatory, in nature'")(citing *Salerno*, 481 U.S. at 747–48)).  As long as it is reasonably related to a legitimate governmental objective, pretrial detention without more does not amount to punishment; detention that is not reasonably related to a legitimate goal, or is arbitrary or purposeless, may constitute constitutionally prohibited punishment, however.  *See Bell*, 520 U.S. at 539.

Although the Fifth Circuit does not appear to have specifically considered whether continued pretrial detention in light of the COVID-19 pandemic violates the Due Process Clause of the Fifth Amendment, trial courts in this district have followed the great weight of authority across the country and rejected such constitutional challenges.  *See United States v. Martinez Hernandez*, No.

6

3:19-cr-651-K, 2020 WL 1876102, at *5 (N.D. Tex. Apr. 14, 2020) (citations omitted); *United States v. Preston*, No. 3:19-cr-651-K, 2020 WL 1819889, at *4 (N.D. Tex. Apr. 11, 2020) (citations omitted); *see also United States v. Parrish*, No. 3:19-cr-160-L (N.D. Tex. May 20, 2020), doc. 102 at 14-16 (quoting *Preston*).

The determination of whether a defendant awaiting a final supervised release revocation hearing should be released is governed by Rule 32.1(a)(6) of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 46. It provides that the defendant may be released or detained under 18 U.S.C. § 3143(a)(1) pending the hearing. Fed. R.Crim. P. 32.1(a)(6). Section 3143(a)(1) in turn requires that a defendant awaiting sentencing "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). Rule 32.1(a)(6) makes clear that it is the defendant who has the burden to establish by clear and convincing evidence that he will not flee or pose a danger to any other person or to the community. Fed. R.Crim. P. 32.1(a)(6).

Courts considering motions for release pending a final supervised release revocation hearing on the basis of the COVID-19 outbreak have found it is not enough, without more, to meet the defendant's burden under Rule 31.2(a)(6). *See United States v. Cagle*, No. 3:15-CR-36, 2020 WL 2341415, at *5 (M.D.Pa. May 11, 2020)(noting that while it was "sympathetic to [the defendant's] concerns regarding the possibility of health complications caused by the COVID-19 virus, the mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused" where the defendant had failed to meet his Rule 32.1 burden); *United States v. Scales*, No. 1:15CR108-1, 2020 WL 1891311, at *5, 7 (M.D.N.C. Apr. 16, 2020) (noting that the defendant had not cited any provision of the Bail Reform Act, 18 U.S.C. §§ 3141, et seq., that would

7

allow the Court to order the release of a defendant who was otherwise subject to detention under Rule 32.1(a)(6) and § 3143(a) based on COVID-19-/health-related considerations and/or general notions of the interest of justice, and finding that release was not warranted "in light of the defendant's abysmal record"); *United States v. Allen*, No. CR612-012, 2020 WL 2220311, at *2 (S.D.Ga. May 7, 2020) (noting that it is not clear that § 3143 permits consideration of any factors outside the required showings, but even assuming it does, generalized concerns about the infection risks inherent in incarceration are not sufficient to support release); *United States v. Garcia-Morales*, No. 16CR1611-CAB, 2020 WL 2218955, at *2 (S.D.Cal. May 6, 2020) (finding that the pandemic did not override the obligation to conduct an individualized analysis under the applicable standards, and that the defendant had not met his burden to demonstrate he was not a flight risk or danger to the community); *United States v. Baryla*, No. 2:19-cr-160-FtM-60MRM, 2020 WL 2128497, at *2–3 (M.D.Fla. May 5, 2020)(finding that the defendant had not met the more stringent provisions of § 3143(a)(1) by offering nothing more than unconvincing speculation about his risk of contracting COVID-19).

As noted, Defendant was detained pending his revocation hearing after a full detention hearing. The Court found that Defendant had failed to meet his burden to show by clear and convincing evidence that he was not a flight risk or danger to the community. The evidence showed a pattern of continuing criminal conduct while on supervised release for a federal offense. He was arrested in two different jurisdictions for several new offenses, including drug offenses as well as fleeing from officers trying to arrest him, and he had absconded from the supervision of his probation officer.

Defendant now generally asserts that the facility in which he is detained is unequipped either

8

to prevent the spread of COVID-19 or isolate and treat persons who become infected, so his continued detention there poses an imminent threat to him. (*See* doc. 24 at 1-2.) He does not allege that he is being detained in the same part of the facility where anyone who is symptomatic or has been diagnosed with COVID-19 is being detained, that he has been exposed to anyone who is symptomatic or has been diagnosed with COVID-19, or even that he has any underlying condition that makes him more susceptible to severe illness from it. *See United States v. Wright,* No. 3:18-cr-635-N, 2020 WL 1694298, at *6 (N.D. Tex. Apr. 7, 2020)(citing *United States v. Morris,* No. 3:19-CR-573-B, 2020 WL 1694301, at * (N.D. Tex. Apr. 6, 2020) (citations omitted)). Nor has he alleged that the facility is not taking reasonable measures to prevent the spread of COVID-19 or to protect him from it. In *Wright*, the court rejected a similar argument for release based in part on allegations that the Dallas County Jail was unequipped to prevent transmission of COVID-19 and treat infected detainees, and that the defendant's ongoing detention there posed an imminent threat to his life because he had an underlying medical condition. 2020 WL 1694298, at *6. It noted that "'[a]s for local pretrial detention facilities the Marshals Service contracts with, each has their own internal procedures as to how they are dealing with the COVID-19 virus and are following CDC guidelines to the best of their ability. Each facility has updated their intake procedures, which includes screening each new inmate for the COVID-19 symptoms, and will deny entry into their facility if an inmate demonstrates any symptoms.'" *Id.* at 6. Recently, in *United States v. Campos-Ramenthol,* __F. App'x __, 2020 WL 2563410, at *1 (5th Cir. May 20, 2020), the Fifth Circuit affirmed an order for pretrial detention pending trial as supported by the record despite the COVID-19 outbreak, noting the lack of cases in the facility at issue as well as the fact that it had procedures in place in case of an outbreak.

9

"While Defendant's concerns about the pandemic are not without merit, that alone is insufficient to warrant release without consideration of the [statutory detention] factors." *United States v. Okhumale*, No. 3:20-cr-122-L, 2020 WL 1694297, at *6 (N.D.Tex. Apr. 7, 2020); *see also United States v. Kerr*, No. 3:19-cr-296-L, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) ("the court cannot not release every detainee who may be at risk of contracting COVID-19, as it would then be required to release all detainees."). He has not provided a basis for reconsideration of his detention pending revocation–his generalized concerns regarding COVID-19 are insufficient to overcome his failure to show by clear and convincing evidence that he is not a flight risk or a danger to the community. Based on the record, including evidence of continued criminal activity and absconding from supervision, his continued detention despite the COVID-19 pandemic is reasonably related to legitimate government interests where he has been found to be a danger to the community and a flight risk, and it does not violate his Due Process rights.

### III. CONCLUSION

Defendant's motion for reconsideration of the detention order and for pre-revocation release is **DENIED**.

**Signed this 22nd day of May, 2020.**

*(signature)*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

10